UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**WISNIEWSKI & ASSOCIATES, LLC**
John S. Wisniewski, Esq. ID Number: 029171987
17 Main Street, Sayreville, NJ 08872
(732) 651-0040
Attorneys for Plaintiff
Our File No. 6050.13276

| | |
|---|---|
| TRANSEL ELEVATOR & ELECTRIC, INC. d/b/a T.E.I. GROUP<br><br>*Plaintiff,*<br><br>vs.<br><br>CROWN ENERGY SERVICES, INC. d/b/a ABLE ENGINEERING SERVICES, ABM INDUSTRIES, JOHN or JANE DOES 1-10, ABC LLC'S 1-10 and XYZ CORPORATIONS 1-10.<br><br>*Defendants.* | Civil Action No.: 2:23-cv-02307-SDW-JSA<br><br>**Hon. Susan D. Wigenton**<br>**Magistrate Judge: Hon. Jessica S. Allen**<br><br>**CIVIL ACTION**<br><br>**SECOND AMENDED COMPLAINT & JURY DEMAND TO ADD COUNTS 5, 6 and 7** |

Plaintiff, Transel Elevator & Electric, Inc. d/b/a T.E.I. Group, having its principal place of business at 30-30 47th Street, Suite 610, Long Island City, State of New York, by way of Complaint against the Defendants, says as follows:

## **PARTIES**

1. Defendant, Crown Energy Services, Inc. d/b/a Able Engineering Services (hereinafter "Able") has a principal place of business located at 868 Folsom Street, San Francisco, California.

2. Upon information and belief, ABM Industries ("ABM"), acquired Able in a transaction that occurred sometime on or after August 21, 2021.

3. Defendants ABC LLC's (1-10), XYZ Corporations (1-10) and John or Jane Does (1-10) are fictitious names for any presently unknown person(s), corporation(s), partnership(s), business and/or entity.

4. Hereinafter, "Defendants" means Able, ABM, John or Jane Does (1-10), ABC LLCs (1-10) and XYZ Corporations (1-10) collectively.

## JURISDICTION AND VENUE

5. Jurisdiction is proper over the Defendants because each of the acts and claims set forth in this Complaint occurred in New Jersey or as a result of Defendants contracting for services in New Jersey.

6. Venue is property pursuant to *R*. 4:3-2(a) because it lies where the cause of action arose and/or in the County in which the services in question were provided.

## FACTUAL BACKGROUND

7. On or about August 1, 2015, Able entered into a Facility Maintenance and Management Services Contract (the "Facility Maintenance and Management Contract") with New Jersey Transit Corporation d/b/a NJ Transit (hereinafter "NJ Transit").

8. The Facility Maintenance and Management Contract required Able to perform all work and labor required to furnish and deliver all goods and materials or services to NJ Transit at Newark Penn Station, Newark Light Rail Mezzanine and Newark Broad Street Station and Plaza.

9. The Facility Maintenance and Management Contract permitted Able to enter into subcontracts with other entities to perform portions of the services.

10. Prior to the Facility Maintenance and Management Contract commencing, Able sought a bid from Plaintiff to repair and maintain the elevators and escalators at Newark Penn Station and Newark Broad Street Station (hereinafter the "Stations").

11. Thereafter, Plaintiff and Able entered into Service Contractors Agreement in which Plaintiff agreed to repair and maintain the elevators and escalators at the Stations. Hereinafter this Service Contractors Agreement and any written or verbal modifications thereto shall be referred to as the "Contract."

12. The Contract commenced on August 1, 2015 and was for a term of three (3) years, with two (2) one (1) year extensions, for a total maximum period of five (5) years.

13. The Stations are, and at all times relevant hereto were, owned by New Jersey Transit.

14. Under the Contract, the work Plaintiff performed at the Stations fell into two categories: (1) tasks specifically described in the Contract for which Plaintiff was to be paid a flat monthly fee (hereinafter "monthly services") and (2) additional work for tasks not specifically contemplated under the Contract that would be done on an as needed basis (hereinafter "*al a carte* services").

15. Pursuant to the Contract, Plaintiff is to be paid a flat monthly fee for its monthly services. Additionally, Plaintiff is to be paid for each *al a carte* service it provides on an hourly basis.

16. Each month from August 1, 2015 through June 30, 2019, the date the Contract was terminated by Able, Plaintiff provided the required monthly services at the Stations.

17. From August 1, 2015 through June 30, 2019, the date the Contract was terminated by Able, Plaintiff provided numerous *al a carte* services at the Stations.

18. The *al a cart* services provided by Plaintiff were for tasks Able specifically requested Plaintiff undertake and included, but were not limited to, tasks such as elevator or escalator clean downs, emergency work and repairs to vandalism.

19. Each *al a cart* service provided by Plaintiff was approved by Able either verbally or in writing prior to the tasks being commenced.

20. Plaintiff provided invoices to Able each month for its monthly services.

21. Plaintiff also provided invoices to Able for each *al a cart* service it provided to Able after each service was provided.

22. Able failed to pay Plaintiff for over four hundred and ninety invoices for *al la cart* services Plaintiff provided Able in the amount of four hundred twenty-six thousand six hundred ninety-six dollars and eighteen cents ($426,696.18).

23. The Defendants have failed to pay Plaintiff any of the monies due and owning detailed in these invoices.

24. The invoices provided by the Plaintiff to Defendants which remain unpaid total four hundred twenty-six thousand six hundred ninety-six dollars and eighteen cents ($426,696.18).

## COUNT ONE

25. Plaintiff repeats and reiterates each and every allegation contained in the factual background of this Complaint as if set forth more fully at length herein.

26. Plaintiff complied with the terms of the Contract with the Defendants.

27. Defendants failed to comply with the terms of the Contract by failing to pay for the services rendered by Plaintiff.

28. As a result of Defendants' failure to comply with the terms of the Contract, Plaintiff was deprived benefits of the Contract which it reasonable expected.

29. As such, Defendants breached its Contract with the Plaintiff.

30. As a direct and proximate cause of Defendants' breach of Contract, Plaintiff has suffered ascertainable damages including monetary and consequential damages.

**WHEREFORE**, Plaintiff demands Judgment against Defendants for:

    a. Compensatory and consequential damages;
    b. Interest;
    c. Attorney fees and costs; and
    d. Such other relief as the Court shall deem fair and equitable.

## COUNT TWO

31. Plaintiff repeats and reiterates each and every allegation contained in the factual background and first count of this Complaint as if set forth more fully at length herein.

32. Defendants owed a duty of good faith and fair dealing to the Plaintiff.

33. Defendants by their actions, omissions and conduct, breached their duty of good

faith and fair dealing.

34. Defendants by their actions, omissions and conduct denied the Plaintiff of the bargain initially intended by the parties in their Contract.

35. As a direct and proximate result, Plaintiff has suffered ascertainable damages including monetary and consequential damages.

**WHEREFORE**, Plaintiff demands Judgment against Defendants for:

    a. Compensatory and consequential damages;
    b. Interest;
    c. Attorney fees and costs; and
    d. Such other relief as the Court shall deem fair and equitable.

## COUNT THREE

36. Plaintiff repeats and reiterates each and every allegation contained in the factual background and first and second counts of this Complaint as if set forth more fully at length herein.

37. Pursuant to the agreement entered into between the parties, Plaintiff provided Defendants with certain services.

38. Said services were provided to the Defendant in exchange for certain promises and agreements by the Defendant to make payments set forth in the agreement.

39. By failing to comply with the requirements of the agreement, Defendant was unjustly enriched by the Plaintiff.

40. As a direct and proximate cause of Defendants' unjust enrichment, Plaintiff has suffered ascertainable monetary damages.

   **WHEREFORE**, Plaintiff demands Judgment against Defendant for:

   a. Compensatory and consequential damages;
   b. Interest;
   c. Attorney fees and costs; and
   d. Such other relief as the Court shall deem fair and equitable.

### COUNT FOUR

41. Plaintiffs repeat and reiterate each and every allegation contained in the factual background, first, second, and third counts of this Complaint, as if set forth more fully at length herein.

42. Defendants, John or Jane Does 1-10, are fictitious names of individuals whose identities may be revealed through continuing discovery and investigation and were individuals that breached a contract with Plaintiff, breached a covenant of good faith and fair dealing with Plaintiff, were, by their conduct, unjustly enriched at the detriment of Plaintiff and/or caused any other damage to Plaintiff.

43. Defendants, ABC LLCs 1-10, are fictitious entities whose identities may be revealed through continuing discovery and investigation and were entities that breached a contract with Plaintiff, breached a covenant of good faith and fair dealing with Plaintiff, were, by their conduct, unjustly enriched at the detriment of Plaintiff and/or caused any other damage to Plaintiff.

44. Defendants, XYZ Corporations 1-10, are fictitious entities whose identities may be revealed through continuing discovery and investigation and were entities that breached a contract with Plaintiff, breached a covenant of good faith and fair

dealing with Plaintiff, were, by their conduct, unjustly enriched at the detriment of Plaintiff and/or caused any other damage to Plaintiff.

45. Defendants, John or Jane Does 1-10, did contribute in causing damage to the Plaintiff.

46. Defendants, ABC LLCs 1-10, did contribute causing damage to the Plaintiff.

47. Defendants, XYZ Corporations 1-10, did contribute causing damage to the Plaintiff.

48. The true names or capacities, whether individual, corporate, associate, representative, or otherwise, of defendants named as John or Jane Does 1-10, ABC LLCs 1-10 and XYZ Corporations 1-10 are not known to Plaintiff who consequently sues these defendants by their fictitious names.

49. Plaintiff will seek leave to amend this Complaint to state the true names and capacities of the fictitiously named defendants when they have been ascertained.

**WHEREFORE**, Plaintiff demands Judgment against Defendants, jointly and severally, for:

    a. Compensatory, consequential and punitive damages;
    b. Interest;
    c. Attorney fees and costs; and
    d. Such other relief as the Court shall deem fair and equitable.

## COUNT FIVE

50. Plaintiff repeats and reiterates each and every allegation contained in the factual background, first, second, third and fourth counts of this Complaint, as if set forth more fully at length herein.

51. Upon information and belief, Defendant CROWN ENERGY SERVICES, INC. d/b/a ABLE ENGINEERING SERVICES ("ABLE" or "CROWN") is a California Corporation.

52. Upon information and belief, Defendant ABM Industries ("ABM"), also known as ABM Industries Incorporated, is a Delaware Corporation.

53. On or about August 25, 2021, ABM and CROWN entered into a Purchase Agreement for 100% of all of the stock of CROWN.

54. On or about September 30, 2021, ABM and CROWN closed on their Purchase Agreement, wherein ABM acquired 100% of all of the stock of CROWN.

55. The sale of stock allow the owners of ABM and CROWN to liquidate CROWN to the detriment of its creditors including Plaintiff.

56. Both ABM and CROWN presently operate out of the same office.

57. ABM has a business address of 14141 Southwest Freeway, Suite 477, Sugar Land, TX, 77478.

58. CROWN has a business address of 14141 Southwest Freeway, Suite 477, Sugar Land, TX, 77478.

59. ABM and CROWN share similar Corporate Officers and Board of Directors.

60. Scott Salmirs, is the President of ABM and a member of the Board of Directors of CROWN.

61. Cory Brit is the Vice President of both ABM and CROWN.

62. David Chin is the Treasurer of both ABM and CROWN.

63. By virtue of its ownership of 100% of stock, common officers, directors and/or controlling employees of the ABM and CROWN, ABM uses CROWN as alter

9

egos.

**WHEREFORE**, Plaintiff, TRANSEL ELEVATOR & ELECTRIC, INC. d/b/a T.E.I. GROUP specifically pray for judgment against Defendants, CROWN ENERGY SERVICES, INC. d/b/a ABLE ENGINEERING SERVICES and ABM INDUSTRIES, jointly and severally, for:

   a. Compensatory, consequential and punitive damages;
   b. Interest;
   c. Attorney fees and costs; and
   d. Such other relief as the Court shall deem fair and equitable.

## COUNT SIX

64. Plaintiff repeats and reiterates each and every allegation contained in the factual background, first, second, third, fourth and fifth counts of this Complaint, as if set forth more fully at length herein.

65. Pursuant to the terms of the August 25, 2021 Purchase Agreement, CROWN was required to identify all pending litigation against CROWN.

66. The debt and subsequent civil litigation instituted by T.E.I. was identified by CROWN to ABM.

67. CROWN and ABM entered into an Escrow Agreement whereby certain monies were set aside from the closing proceeds and placed in Escrow to cover the claims of creditors identified by CROWN, including those claims raised by T.E.I.

68. As a party to the Escrow Agreement, ABM maintains control over funds held in Escrow.

69. As a party to the Escrow Agreement, and as 100% shareholder of CROWN, ABM maintains control over the litigation filed by T.E.I. against CROWN.

70. By virtue of ABM's ownership of 100% of stock CROWN, and by ABM's control over the Escrow, ABM is liable for debts of CROWN to T.E.I.

**WHEREFORE**, Plaintiff, TRANSEL ELEVATOR & ELECTRIC, INC. d/b/a T.E.I. GROUP specifically pray for judgment against Defendants, CROWN ENERGY SERVICES, INC. d/b/a ABLE ENGINEERING SERVICES and ABM INDUSTRIES, jointly and severally, for:

   a. Compensatory, consequential and punitive damages;
   b. Interest;
   c. Attorney fees and costs; and
   d. Such other relief as the Court shall deem fair and equitable.

## COUNT SEVEN

71. Plaintiff repeats and reiterates each and every allegation contained in the factual background, first, second, third, fourth, fifth and sixth counts of this Complaint, as if set forth more fully at length herein.

72. ABM and CROWN act as a single-business enterprise. Alternatively, the transaction whereby CROWN transferred all of its assets to ABM was a *De Facto* merger.

73. CROWN was effectively liquidated after the transfer of its assets to ABM and no effort was made to satisfy the creditors of CROWN, including Plaintiff, except for those vendors who continued to service ABM in its business operations.

74. ABM and CROWN represented to the public that ABM was the continuation of CROWN.

75. The transfer of assets between ABM and CROWN assisted CROWN to evade the creditors of CROWN and avoid paying the claim of Plaintiff. The transaction has

enabled ABM and CROWN to continue the business operations of CROWN uninterrupted without having to pay the Plaintiff.

76. ABM and CROWN are a single business enterprise and should be held liable for one another's debts, including the claims of Plaintiff.

77. The transfer of assets from CROWN to ABM was a *de facto* merger and, as a result, ABM should be held liable for all of the debts of CROWN, including the claims in favor of Plaintiff.

78. By virtue of their conduct, whereby the CROWN operates as an instrument of ABM, such that failure to disregard the separate corporate entity would promote fraud to CROWN's creditors, ABM is liable for the benefits they reaped and the detriment they caused to the Plaintiff.

**WHEREFORE**, Plaintiff, TRANSEL ELEVATOR & ELECTRIC, INC. d/b/a T.E.I. GROUP specifically pray for judgment against Defendants, CROWN ENERGY SERVICES, INC. d/b/a ABLE ENGINEERING SERVICES and ABM INDUSTRIES, jointly and severally, for:

    a. Compensatory, consequential and punitive damages;
    b. Interest;
    c. Attorney fees and costs; and
    d. Such other relief as the Court shall deem fair and equitable.

## JURY DEMAND
## PURSUANT TO *R.* 1:8-2 and *R.* 4:35

The Plaintiff demands trial by a jury of six (6) persons on all of the triable issues of this complaint, pursuant to *R.* 1:8-2 and *R.* 4:35.

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE
## PURSUANT TO *R.* 4:10-2

Pursuant to *R.* 4:10-2, the Plaintiff demands that Defendants disclose to Plaintiff's attorney whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide Plaintiff's attorney with true copies of those insurance agreements or policies, including, but not limited to, any and all declaration sheets. This demand shall include and cover not only primary coverage, but also any and all excess, catastrophe, and umbrella policies.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to the provisions of R. 4:25-4, the court is advised that John S. Wisniewski, Esq., is hereby designated as trial counsel.

## CERTIFICATION

I hereby certify that a copy of the within document has been filed with the Clerk of the captioned Court and that a copy of same was served upon all interested attorneys, within the time allowed by the Rules of Court.

13

**CERTIFICATION PURSUANT TO RULE 4:5-1**

I hereby certify that to the best of my knowledge, information, and belief, the within matter in controversy is not the subject of any other pending or contemplated court actions or arbitration proceedings.

I further certify that to the best of my knowledge, information, and belief, I am not aware of any non-parties who should be joined in the action.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

WISNIEWSKI & ASSOCIATES, LLC

_____
John S. Wisniewski, Esq.
Attorney for Transel Elevator & Electric, Inc.
d/b/a T.E.I. Group

DATED: May 15, 2024