NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRANSEL ELEVATOR & ELECTRIC, INC. d/b/a T.E.I. GROUP,<br><br>Plaintiff,<br><br>v.<br><br>CROWN ENERGY SERVICES, INC. d/b/a ABLE ENGINEERING SERVICES, ABM INDUSTRIES, JANE and JOHN DOE 1–10, ABC LLCs 1–10 and CORPORATION 1–10,<br><br>Defendants. | Civil Action No. 23-2307 (SDW) (JSA)<br><br>**OPINION**<br><br>February 10, 2025 |

**WIGENTON**, District Judge.

Before this Court is Defendant ABM Industries Incorporated's ("ABM") motion to dismiss (D.E. 33) Plaintiff Transel Elevator & Electric, Inc.'s amended complaint (D.E. 28 ("Am. Compl.")). Jurisdiction is proper pursuant to 28 U.S.C. § 1332.[1] Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the motion to dismiss is **GRANTED**.

I.   BACKGROUND AND PROCEDURAL HISTORY

This contract dispute concerns payment for work performed by Plaintiff on the elevators and escalators at Penn Station and Broad Street Station, both public transit stations in Newark, New Jersey. (Am. Compl. ¶¶ 8–11.) Defendant Crown Energy Services, Inc. d/b/a Able

---

[1] The Court is in receipt of the parties' certifications concerning federal subject matter jurisdiction. Based on Defendants' certification, federal subject matter jurisdiction under § 1332 exists now and existed at the time of removal. (*See* D.E. 37 at 4–5.) Plaintiff asserted only that Defendants had not complied with the 30-day deadline to remove the case, which is not jurisdictional and can be asserted only by a timely motion to remand. (*See* D.E. 38; *Ariel Land Owners, Inc. v. Dring*, 351 F.3d 611, 614 (3d Cir. 2003).)

1

Engineering Services ("Able") had contracted with New Jersey Transit Corporation to work on improvements to those stations. (*Id.* at ¶¶ 7–8.) Able then subcontracted with Plaintiff to work on the elevators and escalators at the stations. (*Id.* at ¶¶ 10–11.) The contract between Able and Plaintiff commenced on August 1, 2015, and Plaintiff provided services thereunder. (*Id.* at ¶¶ 12, 16.) Able terminated the contract on June 30, 2019. (*Id.* at ¶¶ 16–17.) Plaintiff alleges that Able has failed to pay over 490 invoices for services provided under the contract, totaling $426,696.18. (*Id.* at ¶ 22.)

Plaintiff sued Able in the Superior Court of New Jersey (Essex County) in 2019 for failure to pay those outstanding invoices. (D.E. 34-1 at 2.) On September 30, 2021, ABM acquired 100% of Able's stock under a purchase agreement. (Am. Compl. ¶ 54.) On April 17, 2023, the Superior Court permitted Plaintiff to add ABM as a Defendant in its case against Able. (D.E. 1-1 at 1–2.) On April 26, 2023, ABM removed the matter to this Court. (D.E. 1.) ABM then moved to dismiss, asserting that ABM acquired Able "**long** after Able entered into the contracts at issue with Plaintiff" and that Plaintiff "failed to allege any facts that would impute successor liability to ABM." (D.E. 19-2 at 1.)[2] Oral argument was held, and ABM's motion to dismiss was granted, on April 18, 2024. (D.E. 24; D.E. 25.) Plaintiff amended the complaint on May 16, 2024 (D.E. 28), and ABM filed the instant motion to dismiss on August 12, 2024 (D.E. 33). Opposition and reply briefs were timely filed. (D.E. 34; D.E. 35.)

II. <u>**LEGAL STANDARD**</u>

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[2] ABM first moved to dismiss on July 3, 2023 (D.E. 6) and following unsuccessful mediation, refiled the motion to dismiss on December 13, 2023 (D.E. 19).

544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining whether a complaint's allegations are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichik*, 605 F.3d 223, 229 (3d Cir. 2010). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[L]abels and conclusions, … formulaic recitation[s] of the elements of a cause of action," and "naked assertion[s]" devoid of "further factual enhancement" are insufficient to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

### III. DISCUSSION

ABM acquired Able well after Plaintiff's contract with Able was terminated, and ABM's last motion to dismiss was granted because Plaintiff had not pled a basis for successor liability. Consistent with the "general rule that 'when a company sells its assets the purchasing company is not liable for the seller's debts and liabilities,'" the complaint was dismissed because Plaintiff had not pled why ABM should be liable for Able's debts. *Vision Pharma, LLC v. Sunrise Pharm., Inc.*, No. 2:13-CV-04692, 2018 WL 3085213, at *3 (D.N.J. June 20, 2018) (applying New Jersey law) (quoting *Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 73 (3d Cir. 1993)). Since

then, Plaintiff amended the complaint by adding three causes of action, Counts Five through Seven, in support of ABM's successor liability. (*See* Am. Compl. ¶¶ 50–78.) The amended complaint is otherwise identical to the prior version. The new Counts provide theories under which ABM could share Able's liability for the causes of action alleged in Counts One through Four. As detailed below, Plaintiff alleges that ABM is liable for Able's debts because the two entities are alter egos, because ABM controls funds held in escrow for Able's creditors, and because ABM's purchase of Able was a de facto merger.

### A. Alter Ego

Count Five alleges that ABM and Able are alter egos and should be jointly and severally liable for Able's debts. (*Id.* at ¶ 63.) In support, Plaintiff alleges that Able was liquidated pursuant to an agreement under which ABM would purchase 100% of Able's stock (*id.* at ¶¶ 53–55), that Able and ABM currently operate out of the same office (*id.* at ¶¶ 56–58), and that Able and ABM "share similar Corporate Officers and Board of Directors" (*id.* at ¶¶ 59–62 (identifying three individuals serving as officers or directors of both entities)).

Finding that a subsidiary and parent company are alter egos, sometimes known as piercing the corporate veil, requires that "the parent entity has 'so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent'" and that the "parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law." *Stone v. Winter Enters., P.C.*, No. CIV. 12-465 RBK/JS, 2012 WL 6155606, at *4 (D.N.J. Dec. 11, 2012) (quoting *State, Dep't of Env't Prot. v. Ventron Corp.*, 468 A.2d 150, 164 (1983)). The fact that a corporation was established "for the sole purpose of acquiring the assets of another corporation and continuing its business" is insufficient to pierce the corporate veil." *Ventron*, 468 A.2d at 165. Likewise, allegations that business entities "have 'common

4

ownership and management, common business practices, common finances, [and] a common website'" are "nowhere near sufficient to support a veil piercing or alter ego claim." *Stone*, 2012 WL 6155606, at *4 (alteration in original).

Here, as in *Stone*, Plaintiff's allegations in support of its alter ego claim are clearly too sparse to survive dismissal.  The fact that ABM purchased 100% of Able's stock, that Able was liquidated, and that the companies share common officers and directors and a common address do not support that Able is so dominated by ABM that it merely serves as ABM's conduit.  Plaintiff also alleges no "element of injustice or fundamental unfairness" or "attempt to 'perpetrate a fraud, injustice, or [other circumvention of] the law'" by Able and ABM.  *Id.* at *5 (alteration in original) (quoting *Trs. of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003); *Ventron*, 468 A.2d at 164).  Accordingly, the claim that ABM is liable for Able's debts as its alter ego must be dismissed.

### B. Escrow Funds

In Count Six, Plaintiff alleges that, pursuant to the purchase agreement between ABM and Able, ABM controls funds held in escrow specifically for Able's creditors.  According to Plaintiff, the purchase agreement required Able to identify all pending litigation against Able. (Am. Compl. ¶ 65.)  Accordingly, Able alerted ABM to this matter, and Able and ABM "entered into an Escrow Agreement whereby certain monies were set aside from the closing proceeds … to cover the claims of creditors," including Plaintiff's. (*Id.* at ¶¶ 66–67.)  Plaintiff asserts that ABM maintains control over the funds held in escrow and over this litigation. (*Id.* at ¶¶ 68–69.)  Therefore, Count Six alleges, ABM is liable for Able's debts to Plaintiff. (*Id.* at ¶ 70.)

These allegations in the amended complaint are conclusory and insufficient to survive a motion to dismiss.  Plaintiff does not allege to be a party to the purchase agreement between ABM

5

and Able.  For a contract to create third party beneficiary rights, "the parties to the contract [must have] intended others to benefit from the existence of the contract." *J.V. ex rel. Valdez v. Macy's, Inc.*, No. CIV. 13-5957 KSH CLW, 2014 WL 4896423, at *3 (D.N.J. Sept. 30, 2014) (quoting *Broadway Maint. Corp. v. Rutgers, State Univ.*, 447 A.2d 906, 909 (N.J. 1982)).  On the other hand, "if 'the benefit so derived arises merely as an unintended incident of the agreement,' then 'the third person is only an incidental beneficiary, having no contractual standing.'" *Id.* (quoting *Broadway Maint.*, 447 A.2d at 909); *see also Crown Fabrics Corp. v. N. Assurance Co.*, 10 A.2d 750, 752 (N.J. 1940) ("Ordinarily the obligations arising out of a contract are not enforceable by a person who is not a party to it or in privity with it.").

Plaintiff here does not plead that it was a third party beneficiary, let alone allege anything regarding the contracting parties' intent.  At best, by noting that ABM set aside funds "to cover the claims of creditors … including those claims raised by [Plaintiff]," the complaint states only that Plaintiff is an unintended beneficiary of the contract.  (Am. Compl. ¶ 67.)  This "possible benefit … by the performance of a contract is not enough to give [Plaintiff] the right to maintain an action upon it." *Crown Fabrics*, 10 A.2d at 752–53.[3]  In other words, even accepting as true the allegations that the purchase agreement required Able to alert ABM to this matter, that Able did so, and that ABM now controls funds allocated for Able's debt to Plaintiff, Plaintiff still lacks authority to sue to enforce that purchase agreement.

Plaintiff does argue, in its opposition to the motion to dismiss, that it is an intended third party beneficiary of the contract between Able and ABM and that it is "protected by the escrow

---

[3] Plaintiff argues that unlike the undisclosed and unidentified third party in *Crown*, it is "a disclosed and intended beneficiary of the escrow agreement." (D.E. 34-1 at 13.)  Plaintiff does not make any non-conclusory allegations concerning the contracting parties' intent, however, to include Plaintiff as a beneficiary of the contract.  The fact that the contract "mandated that [Able] identify all pending litigation" and provided for an escrow account, combined with the conclusion that Able identified *this* litigation with Plaintiff does not support that the parties intended Plaintiff to be a third party beneficiary. (*Id.* at 14.)

6

agreement." (D.E. 34-1 at 11–14.) In support, Plaintiff attaches a declaration to its opposition which provides that Defendant's Counsel advised that "proceeds from the sale of stock were placed in an Escrow Account for litigation matters" and that "the new owners … were now overseeing the litigation." (D.E. 34-2 at ¶¶ 14–15.) These further allegations still do not establish that Able and ABM intended their creditors to benefit from the purchase agreement, and even if they did, Plaintiff has not clearly explained how controlling funds held in escrow overcomes "[t]he general rule of … non-liability for acquiring corporations." *U.S. v. Gen. Battery Corp., Inc.*, 423 F.3d 294, 305 (3d Cir. 2005). In any event, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commw. Of Pa. ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Accordingly, Plaintiff's claim that ABM controls escrow funds and is therefore liable to Plaintiff must be dismissed.

### C. De Facto Merger

Count Seven asserts that ABM is liable for Able's debt to Plaintiff because ABM's purchase of Able was a de facto merger, making ABM and Able a single business enterprise or rendering Able "an instrument of ABM, such that failure to disregard the separate corporate entity would promote fraud to [Able's] creditors." (Am. Compl. ¶¶ 72, 76–78). In support, Plaintiff alleges that Able was "effectively liquidated" after it was purchased by ABM, that ABM and Able publicly represented that ABM was a continuation of Able, and that ABM's purchase of Able allowed Able to "evade the creditors of [Able] and avoid paying the claim of Plaintiff." (*Id.* at ¶¶ 73–75.)

"[T]he de facto merger and mere continuation theories serve as exceptions to the general rule that 'when a company sells its assets the purchasing company is not liable for the seller's debts

and liabilities.'" *Vision Pharma*, 2018 WL 3085213, at *3 (quoting *Luxliner*, 13 F.3d at 73).

Determining whether a transaction was a de facto merger requires examining four factors:

> (i) continuity of management, personnel, physical location, assets, and general business operations; (ii) a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (iii) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and (iv) continuity of ownership/shareholders.

*Id.*; *see also Gen. Battery*, 423 F.3d at 305 (3d Cir. 2005).

The only one of these factors that the complaint addresses in anything more than a conclusory fashion is the first one. In connection with the alter ego claim, Plaintiff lists three individuals serving as officers or directors of both Able and ABM and alleges that the two entities share an address. (Am. Compl. ¶¶ 60–62.) To the extent the remaining factors are addressed, they are merely restated in Count Seven without factual support. (*See id.* at ¶¶ 73, 75 (alleging that Able was "effectively liquidated after the transfer of its assets to ABM," made no effort "to satisfy the creditors of [Able], including Plaintiff, except for those vendors who continued to service ABM," and that the purchase "enabled ABM and [Able] to continue the business operations of [Able] uninterrupted without having to pay the Plaintiff").) These unsupported allegations amount to no more than a "formulaic recitation of the elements of a cause of action," and they are insufficient for the de facto merger claim to survive dismissal. *Twombly*, 550 U.S. at 555. Similarly, as above, the fact that three people hold leadership positions at both Able and ABM is insufficient to establish at this stage that they are a single enterprise. The de facto merger claim is similar to the alter ego claim, and it also suffers from the same defect—Plaintiff offers nothing other than conclusory allegations in support.

Overall, Plaintiff has amended its complaint to name *theories* of liability for ABM, of which the last complaint was completely devoid. It still has not adequately supported those

theories, however, to overcome the general rule that a successor corporation is not liable for the predecessor's debts. The complaint remains deficient as to ABM's liability.

## IV. CONCLUSION

For the reasons set forth above, the motion to dismiss is GRANTED, and the complaint is DISMISSED WITHOUT PREJUDICE. Plaintiff shall have thirty (30) days to file an amended complaint. Failure to timely file an amended complaint may result in the dismissal of this matter with prejudice. An appropriate order follows.

                                                                                          /s/ *Susan D. Wigenton*
                                                                                          **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties
         Jessica S. Allen, U.S.M.J.