<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TRANSEL ELEVATOR & ELECTRIC, INC. d/b/a T.E.I. GROUP,<br><br>    Plaintiff,<br><br>v.<br><br>CROWN ENERGY SERVICES, INC. d/b/a ABLE ENGINEERING SERVICES, et al.<br><br>    Defendants. | Civil Action No. 23-2307 (SDW) (JSA)<br><br>**OPINION**<br><br>April 15, 2026 |

**WIGENTON**, District Judge.

Before this Court is Defendants Crown Energy Services, Inc. d/b/a Able Engineering Services ("Able"), ABM Industries Incorporated ("ABM"), Paul Saccone ("Saccone"), Scott Salmirs ("Salmirs"), Paul Bensi ("Bensi"), Michael Boschetto ("Michael"), and Paul Boschetto's ("Boschetto") (collectively, "Defendants") Motion to Dismiss (D.E. 50) Plaintiff Transel Elevator & Electric, Inc.'s Third Amended Complaint (D.E. 41 ("TAC.")). Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the Motion to Dismiss is **GRANTED**.

**I.    <u>BACKGROUND AND PROCEDURAL HISTORY</u>**

This contract dispute concerns payment for work performed by Plaintiff on the elevators and escalators at Penn Station and Broad Street Station, both public transit stations in Newark, New Jersey. (TAC ¶¶ 16–41.) Defendant Able had contracted with New Jersey Transit Corporation to work on improvements to those stations. (*Id.* at ¶¶ 16–17.) Able then subcontracted

1

with Plaintiff to work on the elevators and escalators at the stations.  (*Id.* at ¶ 20.)  The contract between Able and Plaintiff commenced on August 1, 2015, and Plaintiff provided services thereunder.  (*Id.* at ¶ 21.)  Able terminated the contract on June 30, 2019.  (*Id.* at ¶ 26.)  Plaintiff alleges that Able has failed to pay over 490 invoices for services provided under the contract, totaling $426,696.18.  (*Id.* at ¶¶ 39, 53.)

Plaintiff sued Able in the Superior Court of New Jersey, Essex County in 2019 for failure to pay those outstanding invoices.  (D.E. 34-1 at 2.)  On September 30, 2021, ABM acquired 100% of Able's stock under a purchase agreement.  (TAC ¶ 73.)  On April 17, 2023, the Superior Court permitted Plaintiff to add ABM as a Defendant in its case against Able.  (D.E. 1-1 at 1–2.)  On April 26, 2023, ABM removed the matter to this Court.  (D.E. 1.)  ABM then moved to dismiss, and the motion to dismiss was granted on April 18, 2024.  (D.E. 24; D.E. 25.)  Plaintiff amended the complaint on May 16, 2024 (D.E. 28), and ABM filed a motion to dismiss on August 12, 2024 (D.E. 33).  This Court granted ABM's motion to dismiss on February 10, 2025 (D.E. 39), and Plaintiff then filed a third amended complaint on March 5, 2025 (D.E. 41).  Defendants filed the instant motion to dismiss on October 13, 2025.  (D.E. 50.)  All briefing was timely completed.

## II.    LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Determining whether a complaint's allegations are "plausible" is "a context-specific

2

task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichik*, 605 F.3d 223, 229 (3d Cir. 2010). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[L]abels and conclusions, … formulaic recitation[s] of the elements of a cause of action," and "naked assertion[s]" devoid of "further factual enhancement" are insufficient to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

## III.    **DISCUSSION**

### A.  **Count I — Prompt Payment Act**

Count I of Plaintiff's Third Amended Complaint asserts a claim against Defendants under the New Jersey Prompt Payment Act ("PPA"). Defendants argue that the PPA does not apply because the contract between the parties was not a contract to "improve real property," as defined by the statute. Under the PPA, a party may bring suit to recover payments owing on a contract when they are more than thirty days overdue. N.J. Stat. Ann. § 2A:30A-2. However, the PPA does not apply to all service contracts, such as contracts for routine maintenance or upkeep. *See TBI Unlimited, LLC v. Clearcut Lawn Decisions, LLC*, No. 12-3355, 2013 WL 1223643, at *2 (D.N.J. Mar. 25, 2013) (citing N.J. Stat. Ann. § 2A:30A-1). Here, the parties entered into a maintenance and management agreement, which included services that did not cover actual

3

repairs.  As such, the PPA is inapplicable to Plaintiff's contract with Defendants.  Therefore, Count I is dismissed.

### B.  Counts III and IV — Fraud Claims[1]

*i.    New Jersey Consumer Fraud Act*

To state a claim under the New Jersey Consumer Fraud Act ("CFA"), a plaintiff must demonstrate: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of plaintiff; and (3) a causal connection between the defendants' unlawful conduct and the plaintiff's ascertainable loss.  *Badalamenti v. Resideo Techs., Inc.*, 755 F. Supp. 3d 534, 548 (D.N.J. 2024) (citing *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (2009)).  Critically, in order to state a claim under the CFA, the plaintiff must be a "consumer," within the meaning of the statute.  A "consumer" is generally defined as "one who uses economic goods and so diminishes or destroys their utilities."  *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 544 (D.N.J. 2013) (citing *Hundred E. Credit Corp. v. Eric Shuster Corp.*, 515 A.2d 246, 248 (N.J. Super. Ct. App. Div. 1986)).  Here, the CFA is inapplicable because Plaintiff was the seller of services rather than the purchaser, and thus, not a "consumer" under the CFA.  *See Brancato v. Specialized Loan Servicing, LLC*, No. 15-6780, 2018 WL 2770137, at *7 (D.N.J. June 8, 2018) (dismissing CFA claim because the plaintiff never bought any merchandise or real estate from the defendant).

Moreover, Plaintiff has not alleged any unlawful conduct beyond a mere breach of contract.  A breach of contract "is not per se unfair or unconscionable" and cannot alone constitute an unlawful act under the CFA.  *See Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994).  In order for a breach of contract claim to be actionable under the CFA, there must be a showing of

---

[1] While not a separate count, to the extent that Plaintiff raises issues of fraud during this litigation and malicious use of process, such issues fail to state a claim.  Importantly, issues regarding discovery should have and could been raised with this Court and do not form a basis to amend the TAC.

"substantial aggravating circumstances." *Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir.1997); *see also Petri Paint Co. v. Omg Ams., Inc.*, 595 F.Supp.2d 416, 421 (D.N.J. 2008) ("to succeed on a consumer fraud claim, a plaintiff must demonstrate 'substantial aggravating circumstances' " in addition to the breach). Substantial aggravating circumstances include "the existence of bad faith or lack of fair dealing, sufficient to constitute an unconscionable business practice." *Petri*, 595 F.Supp.2d at 421 (*quoting Cox*, 647 A.2d at 462). Here, even if Plaintiff was a consumer, Plaintiff fails to sufficiently allege any adequate substantial aggravating circumstance to maintain its claims under the CFA.  Accordingly, Count III is dismissed.

ii.    *Fraud Claim Against Individual Defendants*

Count IV of Plaintiff's Third Amended Complaint asserts claims for fraud against Individual Defendants Saccone, Salmirs, Bensi, Michael, and Boschetto.  For allegations sounding in fraud, Rule 9(b) imposes a heightened pleading standard.  Specifically, a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b); *Eberhart v. LG Elecs. USA, Inc.*, 188 F. Supp. 3d 401, 405 (D.N.J. 2016).  A plaintiff must "allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 301 (D.N.J. 2019) (citing *Urbino v. Ambit Energy Holdings, LLC*, No. 14-5184, 2015 WL 4510201, at *3 (D.N.J. July 24, 2015)).  Here, Plaintiff's fraud claims fail because the TAC contains no factual allegations of any fraud committed by the Individual Defendants.  Instead, the TAC merely asserts that the Individual Defendants are liable.  Such conclusory allegations are insufficient to satisfy Rule 9(b)'s heightened pleading standard. Therefore, Count IV is dismissed.

5

### C.  Counts VI through IX — Successor Liability

Plaintiff asserts that ABM is liable for Able's debt to Plaintiff because ABM's purchase of Able was a de facto merger, making ABM and Able a single business enterprise.  (TAC ¶¶ 207–226).  In support, Plaintiff alleges that the purchase of Able's stock by ABM allows the owners of ABM and Able to liquidate Able to the detriment of its creditors, including Plaintiff.  (*Id.* at ¶ 218.) "[T]he de facto merger and mere continuation theories serve as exceptions to the general rule that 'when a company sells its assets the purchasing company is not liable for the seller's debts and liabilities.'"  *Vision Pharma, LLC v. Sunrise Pharm., Inc.*, No. 2:13 -04692, 2018 WL 3085213, at *3 (D.N.J. June 20, 2018) (applying New Jersey law) (quoting *Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 73 (3d Cir. 1993)).  Determining whether a transaction was a de facto merger requires examining four factors:

> (i) continuity of management, personnel, physical location, assets, and general business operations; (ii) a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (iii) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and (iv) continuity of ownership/shareholders.

*Pub. Serv. Elec. & Gas Co. v. Cooper Indus., LLC*, 678 F. Supp. 3d 611, 622 (D.N.J. 2023) (applying New Jersey law) (quoting *Luxliner*, 13 F.3d 69 at 73).  New Jersey courts have also "adopted a broader standard of successor liability that deemphasizes the continuity of shareholder interest" in particular.  *Berg Chilling Systems, Inc. v. Hull Corp.*, 435 F.3d 455, 462 (2006). Ultimately, the critical inquiry is whether the contracting parties intended to effectuate a merger or consolidation rather than the sale of assets.  *See Cooper Indus., LLC*, 678 F. Supp. 3d at 611.

Here, again, as noted in this Court's previous opinion, Plaintiff only sufficiently addresses the first factor.  To the extent the remaining factors are addressed, Plaintiff attempts to the support the allegations by referencing the Purchase Agreement.  (*See* TAC at ¶ 226 ("(i) the continuity of

6

ownership evidenced by the Purchase Agreement; (ii) cessation of ordinary business . . . as is shown in the Purchase Agreement; (iii) the assumption of liabilities of [Able] as is demonstrated in the Purchase Agreement")).  However, Plaintiff offers no factual support or allegations as to why the Purchase Agreement demonstrates the cessation of ordinary business; nor does Plaintiff cite to any provision of the Purchase Agreement where ABM assumes the liabilities of Able. Plaintiff simply relies on language referencing the Purchase Agreement to insufficiently bolster its conclusory allegations.[2]  These unsupported allegations amount to no more than a "formulaic recitation of the elements of a cause of action," and they are insufficient for the de facto merger claim to survive dismissal.  *Twombly*, 550 U.S. at 555.  Therefore, Plaintiff has failed to demonstrate that ABM's purchase of Able was a de facto merger and thus, Plaintiff cannot support its additional claims based on successor liability.  Accordingly, Counts VI through IX are dismissed.

## IV.   **CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**.  Plaintiff's breach of contract (Count II) and book account (Count V) claims will proceed against Defendant Able only.[3]  An appropriate order follows.

/s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:    Parties
        Jessica S. Allen, U.S.M.J.

---

[2] Although Plaintiff failed to attach a copy of the Purchase Agreement to the TAC, Plaintiff previously provided a copy in its prior briefings. (*See* D.E. 34-5.)

[3] At this juncture, this Court dismisses Counts I, III, IV, VI, VII, VIII, IX of Plaintiff's Third Amended Complaint with prejudice as permitting Plaintiff to further amend his complaint would be futile.  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *see also Pacira Biosciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*, 583 F. Supp. 3d 654, 662 (D.N.J. 2022) (dismissing a complaint with prejudice after finding amendment would be futile).